## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

**SARAH SNYDER, BARBARA LOGAN,**
**and DAVID CONOLY**
*on behalf of themselves and all others*
*similarly situated*,

        **Plaintiffs,**

**v.**                                                    Civil Action No. __3:24cv757__

**EQUIFAX INFORMATION**
**SERVICES, LLC**

**SERVE:**      **Corporation Service Company, Reg. Agent**
             **100 Shockoe Slip**
             **2nd Floor**
             **Richmond, VA 23219,**

             **Defendant.**

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, SARAH SNYDER, BARBARA LOGAN, AND DAVID CONOLY ("Plaintiffs"), *on behalf of themselves and all individuals similarly situated*, by Counsel, and for their Complaint against EQUIFAX INFORMATION SERVICES, LCC ("Defendant") they allege as follows:

## PRELIMINARY STATEMENT

1.      Section 1681e(b) is one of the cornerstone provisions of the Fair Credit Reporting Act ("FCRA"), requiring consumer reporting agencies ("CRAs") like Defendant to maintain reasonable procedures to assure maximum possible accuracy in their credit reporting. 15 U.S.C. § 1681e(b).

2.      This consumer class action challenges the uniform policies and procedures of Defendant **EQUIFAX INFORMATION SERVICES, LLC** regarding debts discharged through bankruptcy cases that are converted from Chapter 13 to Chapter 7.

3.      When faced with bankruptcy, most consumer debtors have the option of proceeding under Chapter 13. *See generally* 11 U.S.C. § 109(g). One of the greatest benefits of Chapter 13 is its flexibility. Under 11 U.S.C. § 1307, a debtor may convert a Chapter 13 case to a Chapter 7 case "at any time," and the right to convert a Chapter 13 to a Chapter 7 is non-waivable.

4.      Converting a case from Chapter 13 to Chapter 7 "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Thus, "in a case converted from Chapter 13, a debtor's post-petition earnings and acquisitions do not become part of the new Chapter 7 estate." *Sherman v. Wal–Mart Assocs., Inc.*, 550 B.R. 105, 109 (N.D. Tex. 2016) (citing *Harris v. Viegelahn*, 135 S. Ct. 1829, 1837, 191 L. Ed. 2d 783 (2015)).

5.      Although the bankruptcy petition date in a converted case remains unchanged, debts that the consumer incurs after the bankruptcy filing (but prior to the conversion) are included in the bankruptcy discharge, as though they were incurred pre-petition. *See* 11 U.S.C. § 348(d). Simply put, converting a Chapter 13 to a Chapter 7 allows the debtor to discharge debts that were incurred during the Chapter 13.

6.      And, of course, debts that are incurred pre-petition would still be discharged in a converted case, the same as they would have been if the debtor had originally filed a Chapter 7.

7.      Defendant has failed to implement any policies or procedures for ensuring that it properly reports debts that are discharged in cases converted from Chapter 13 to Chapter 7, and

Defendant erroneously and systematically reports these discharged debts as due and owing and/or past due. Defendant's practices deprive consumers of their important statutory right under 15 U.S.C. § 1681e(b) to have *only* maximally accurate information reported on their credit.

8.      Further, Defendant is aware of the failures of its reporting of Chapter 7 discharged tradelines as it has repeatedly been sued for these failures. In 2008, Equifax entered into a national injunction against the same misconduct. *White v. Experian Info. Solutions, Inc*., et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008) (Doc. No. 338) (Exhibit "A").  Defendant has to date refused to apply the standards established by this injunction to the Chapter 7 discharges that it reports after conversion from a Chapter 13 filing.

9.      Defendant has a history of inaccurately reporting tradelines of consumers who have converted Chapter 13 bankruptcy to Chapter 7s, and Defendant is specifically aware of this history. One of the named Plaintiffs in this case, Sarah Snyder (f/k/a Sarah Solomon), previously sued Defendant over this same issue less than five years ago. *Solomon v. Equifax Information Services, LLC*, No. 3:19-cv-255-JAG (E.D. Va. Filed April 10, 2019).

## JURISDICTION

10.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11.      Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division.  Plaintiffs reside here and their bankruptcy proceedings occurred here.   The entire Virginia sub-class resides in the Commonwealth of Virginia.

## PARTIES

12.      Plaintiff Sarah Solomon is a natural person, a resident of the Richmond Division, and a "consumer" as defined by 15 U.S.C. §1681a(c).

3

13.    Plaintiff Barbara Logan is a natural person, a resident of the Richmond Division, and a "consumer" as defined by 15 U.S.C. §1681a(c).

14.    Plaintiff David Conoly is a natural person, a resident of the Richmond Division, and a "consumer" as defined by 15 U.S.C. §1681a(c).

15.    Defendant **EQUIFAX INFORMATION SERVICES, LLC** ("Equifax") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, VA. **Equifax** is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  **Equifax** is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

## FACTS

### Plaintiffs' Experiences

### Sarah Snyder

16.    On or around February 21, 2023, Plaintiff Snyder obtained an **Equifax** credit report and discovered that an account with Discover was reporting a negative payment history from December of 2017 through January of 2020, including twelve months with a "charged off" status.

17.    This information was inaccurate—Plaintiff Snyder obtained a bankruptcy discharge in March 2018 from the United States Bankruptcy Court for the Eastern District of Virginia and the Discover account was included in her discharge.

18.    Plaintiff Snyder's original bankruptcy filing was under Chapter 13, and she incurred the Discover debt after filing her Chapter 13 petition. She later converted the Chapter 13 proceeding to a Chapter 7 in November of 2017.

4

19.     The fact of the conversion, as well as the date it occurred, is available on the bankruptcy docket that can be accessed on www.pacer.gov.

20.     It is black-letter bankruptcy law that the conversion caused the Discover debt to be treated as though it was incurred before the filing of the Chapter 7 petition, meaning any bankruptcy discharge would include those debts.

21.     As a result of Plaintiff Snyder converting her bankrupcy to a Chapter 7, the debt that she owed to Discover was included in her discharge. Defendant's reporting of the debt as due and owing or past due after Plaintiff Snyder received her discharge was therefore inaccurate.

22.     Further, because Plaintiff Snyder was protected by the automatic stay, Defendant's reporting of the Discover account as increasingly negative (and eventually "charged off") during the time between Plaintiff Snyder's conversion to Chapter 7 and her bankruptcy discharge was also inaccurate.

23.     This is not the first class action case that Plaintiff Snyder has filed against Equifax for its inaccurate reporting of debts following her bankruptcy discharge.

24.     In April of 2019, Plaintiff Snyder was the named plaintiff in a class action against Equifax[1] asserting the same thing that she is asserting today: that Equifax lacks adequate procedures (or any procedures at all) for ensuring the proper reporting of debts that are discharged in bankruptcies that are converted from Chapter 13 to Chapter 7.

### *David Conoly*

25.     On or around August 23, 2023, Plaintiff Conoly obtained an **Equifax** report and discovered that an account with Conn Credit Corp was reporting as over 120 days past due with a balance of $4,913 owed, an account with Discover was reporting as charged off with a balance

---

[1] *Solomon v. Equifax Information Services, LLC,* No. 3:19-cv-255-JAG (E.D.Va. April 10, 2019).

5

of $2,555 owed, and an account with Capital One was reporting as charged off with a balance of $347 owed.

26.     This information was inaccurate. Plaintiff Conoly obtained a bankruptcy discharge in May of 2023 from the United States Bankruptcy Court for the Eastern District of Virginia. The Conn Credit Corp account, the Capital One account, and the Discover account were all included in his bankruptcy discharge.

27.     Plaintiff Conoly originally filed a Chapter 13 Bankruptcy, which he converted to a Chapter 7 in January of 2023. Because of this chapter conversion, the debt that Plaintiff Conoly owed to Conn Credit Corp was included in his bankruptcy discharge.

28.     Plaintiff Conoly's conversion to a Chapter 7 bankruptcy had no impact on the dischargeability of either the Capital One debt or the Discover debt because both of these debts were incurred prior to his Chapter 13 petition and both would have been discharged even without Plaintiff Conoly converting his bankruptcy to a Chapter 7.

29.     Because these pre-petition and post-petition debts were included in Plaintiff Conoly's discharge, Defendant's reporting of the debts as due and owing or past due after Plaintiff Conoly received his discharge was inaccurate.

30.     Further, because Plaintiff Conoly was protected by the automatic stay, Defendant's reporting of the Conn Credit Corp account as increasingly negative during the time between Plaintiff Conoly's conversion to Chapter 7 and his bankruptcy discharge was also inaccurate.

*Barbara Logan*

31.     On or about November 3, 2023 Plaintiff Logan obtained an Equifax report and discovered that an account with Carolina Finance was reporting as charged off with a balance of $5,112 owed.

32.     This information was inaccurate. Plaintiff Logan obtained a bankruptcy discharge in June of 2021 from the United States Bankruptcy Court for the Eastern District of Virginia. The Carolina Finance account was included in her bankruptcy discharge.

33.     Plaintiff Logan originally filed a Chapter 13 Bankruptcy, which she converted to a Chapter 7 in March of 2021. However, Plaintiff Logan's conversion to a Chapter 7 bankruptcy had no impact on the dischargeability of the Carolina Finance debt because the debt was incurred prior to her Chapter 13 petition and would have been discharged even without Plaintiff Logan converting her bankruptcy to a Chapter 7.

34.     Because this pre-petition debt was included in Plaintiff Logan's discharge, Defendant's reporting of the debt as due and owing or past due after Plaintiff Logan received her discharge was inaccurate.

*All Plaintiffs*

35.     The information showing that these debts were discharged was easily, cost-effective, and publicly available to Defendant before it furnished any of the subject credit reports regarding Plaintiffs.

36.     Defendant could have caught these inaccuracies if it implemented and followed even simple automated processes within its reporting procedures.

37.     If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy of this information, it would have easily determined that these accounts were discharged in Plaintiffs' Bankruptcies. Because Defendant could learn this

information easily by reviewing the bankruptcy records, concluding that the debts were discharged would not require Defendant to make any inquiry to Plaintiffs personally, or even require Defendant to obtain information from a credit furnisher.

38.    Defendant should have been alerted to the inaccuracy of its reports because the public records section of Plaintiffs' credit reports each included an entry regarding the Plaintiffs' bankruptcies, which initially indicated that Plaintiff had filed a Chapter 13 and was subsequently changed to reflect that Plaintiff had converted their case to a Chapter 7. Defendant had direct access to the bankruptcy records confirming this fact.

39.    Defendant's own records therefore confirm that it had actual notice of the conversions, yet it has nothing in place to evaluate how the conversion affects the debts it includes in other sections of those same credit reports.

40.    Defendant also had more-than-ample notice that Plaintiff Conoly and Plaintiff Logan's pre-petition debts were discharged because these debts would have been discharged regardless of whether Plaintiff Conoly and Plaintiff Logan converted their cases to Chapter 7 or obtained a discharge under Chapter 13.

41.    Furthermore, even if Plaintiff Snyder hadn't previously sued Defendant over the post-discharge reporting of the same Discover account, Defendant should have been alerted that Plaintiff Snyder's post-filing accounts were discharged because several other accounts, which were opened post-petition but pre-conversion, were updated to correctly show that they were included in Plaintiff Snyder's discharge.

42.    Defendant knowingly choose to ignore these obvious red flags in violation of § 1681e(b).

8

43.     As a result of Defendant's conduct, Plaintiffs and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005) (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.").

### *Defendant's Business Model and Notice Regarding Bankruptcy Inaccuracies*

44.     Defendant has a long history of government enforcement actions, consumer complaints, and lawsuits establishing that it and the other national consumer reporting agencies systematically inaccurately report information related to debts discharged in bankruptcy. *See, e.g., White v. Experian Info. Sols., Inc.*, No. 8:05-cv-01070 (C.D. Cal.); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a bankruptcy lawyer's survey of approximately 900 clients found that 64% of Trans Union reports and 66% of Equifax reports erroneously list one or more discharged debts as due and owing).

45.     In *White*, Defendant was the subject of a national court injunction requiring it to ensure that it did not report tradelines that were included in Chapter 7 discharges.  Here, it plainly ignored that requirement for Chapter 13 conversions despite being aware of the potential problems with that approach. And whether or not that injunction binds Defendant here, it certainly provided it actual notice sufficient to have predicted and prevented the inaccuracies addressed in this Complaint.

46.    Even beyond the notice provided by *White*, Defendant is aware of the specific problems associated with its reporting of debts after a consumer converts their bankruptcy from a Chapter 13 to Chapter 7. In 2019, one of the named Plaintiffs in this case, Sarah Snyder (f/k/a Sarah Solomon), brought a class action against Defendant over this same issue. *Solomon v. Equifax Information Services, LLC*, No. 3:19-cv-255-JAG (E.D. Va. Filed April 10, 2019).

47.    Despite the frequent inaccuracies related to accounts discharged in bankruptcy, Defendant continues to maintain unreasonable procedures regarding the manner in which it publishes bankruptcy-related information.

48.    If Defendant had reasonable procedures (or, perhaps any procedure) to assure maximum possible accuracy, it would have easily determined that these accounts were discharged in bankruptcy. All that is required is a review of the records Defendant has in its possession and is reporting, yet Defendant does not have appropriate procedures in place to ensure its reporting is as maximally accurate as possible.

49.    Defendant should have been alerted to the inaccuracy of its reports because the public records section of Plaintiffs' credit reports each included an entry regarding the bankruptcy which initially indicated that each Plaintiff had filed a Chapter 13, and subsequently indicated that each Plaintiff had converted their case to a Chapter 7. This information, along with proof of the Plaintiffs' bankruptcy discharges, was readily available to Defendant and easily attainable by Defendant.

50.    To that end, Defendant should have been alerted that the subject accounts were discharged because several other accounts, some of which were opened pre-petition and others which were opened post-petition but pre-conversion, were updated to correctly show that they were included in Plaintiffs' discharges.

51.    However, upon information and belief, despite the abundance of notice available to Defendant regarding the frequent errors in its bankruptcy related credit information, Defendant does not independently review the information that it receives from furnisher customers.

52.    Instead, Defendant merely parrots the information about accounts included in bankruptcy that it receives from furnishers, without taking any additional steps to ensure that the accounts are updated after a consumer receives a discharge.

53.    While these furnishers may incorrectly report to Defendant that the debts are valid and due, Defendant's own records would inform it that the debts were discharged.

54.    Upon information and belief, Defendant has actual knowledge of the problems associated with its systematic, erroneous reporting of one or more discharged debts as due and owing, yet it deliberately chooses to ignore these problems because reviewing and/or cross-checking the data would reduce its bottom line.

55.    At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

56.    Despite being a business whose very core is data and reporting it accurately, Defendant (as well as the other CRAs) take the well-worn position that "bankruptcy is hard," and fraught with such a multitude of potential pitfalls that it should not be required to interpret the plain meaning of things on a bankruptcy docket.

57.    This of course goes directly against Defendant's conduct, as it makes determinations about what entries on a bankruptcy docket mean every day when including such information in credit reports it sells.

58.    Prior litigation and government oversight has highlighted these systematic issues. Defendant failed to adopt any procedures despite the fact that it has been subject to court decisions critical of similar conduct. *White*, No. 8:05-cv-01070; *Acosta*, 243 F.R.D. 377, n.3; *see also* Federal Trade Comm., 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 67 (July 2011) ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").[2]

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

59.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length in this paragraph.

60.    **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a class initially defined as follows:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the public record section of the consumer report indicated that the consumer had received a Chapter 7 bankruptcy discharge; (3) where the public record section of the consumer's file with Defendant previously referred to the

---

[2] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

Chapter 7 bankruptcy as a Chapter 13 bankruptcy, and (4) the report indicated an outstanding balance or a past due indication on an account on the report that was open when the bankruptcy was filed or opened after the bankruptcy was filed and before the bankruptcy was converted from a Chapter 13 to a Chapter 7.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

61.    **The Virginia 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a class initially defined as follows:

All natural persons with a primary address located in Virginia, within Defendant's file who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the public record section of the consumer report indicated that the consumer had received a Chapter 7 bankruptcy discharge; (3) where the public record section of the consumer's file with Defendant previously referred to the Chapter 7 bankruptcy as a Chapter 13 bankruptcy, and (4) the report indicated an outstanding balance or a past due indication on an account on the report that was open when the bankruptcy was filed or opened after the bankruptcy was filed and before the bankruptcy was converted from a Chapter 13 to a Chapter 7.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

62.    **Numerosity**. Upon information and belief, Plaintiffs allege that the 1681e(b) class and subclass are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by publication or mailed notice.

63.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had reasonable procedures to assure that it did not erroneously list one or more discharged debts as due and owing and/or

13

past due; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and putative class members.

64.    **Typicality**. Plaintiffs' claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiffs, as every putative class member, allege a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. For purposes of class certification, Plaintiffs seek only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiffs are entitled to the relief under the same causes of action as the other members of the class.

65.    **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the class and subclass. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted those responsibilities.

66.    Certification of the class and subclass under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.    As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using

14

individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

        b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

67.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs and the putative class members, by erroneously listing one or more discharged debts as due and owing and/or past due where it was apparent that the consumer had received a bankruptcy discharge in a bankruptcy case that was converted from a Chapter 13 to a Chapter 7.

68.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

69.     Plaintiffs and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiffs moves for class certification and for judgment against Defendant, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs, and other specific or general relief as the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**PLAINTIFFS**, *individually and on behalf of all others similarly situated*

By:   */s/ Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Emily Connor Kennedy, VSB #83889
Mark C. Leffler, VSB# 40712
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email:  emily@clalegal.com
Email: mark@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiffs*